UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HAROLD CORNISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:08-CV-1968-G |
| DALLAS INDEPENDENT SCHOOL | ) | |
| DISTRICT, | ) | **ECF** |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion for summary judgment of the defendant Dallas

Independent School District ("DISD").  For the following reasons, the motion is

granted.

I.  BACKGROUND

In May 2006, John Blackburn ("Chief Blackburn") became DISD's Chief of

Police.  Defendant's Appendix in Support of their [sic] Motion for Summary

Judgment ("Appendix to Motion") at Def. App. 0945.  After concluding that DISD's

hiring practices were unsatisfactory, Chief Blackburn implemented a new policy

regarding the hiring of police officers for the DISD. *Id*. at Def. App. 0946. This policy was similar to that of a policy he implemented for the Houston Independent School District, his previous employer. *Id*. Under DISD's new policy, a prospective DISD employee would undergo, among other requirements, a physical agility test, an employment background check, and an "automatic disqualification for applicants who had been terminated by a previous agency and . . . listed as 'no rehire' with that agency." *Id*. From May 2006 to June 2006, then DISD Lieutenant Bill Avera ("Assistant Chief Avera"), now DISD's Assistant Chief of Police, worked with Chief Blackburn to implement the new policy. *Id*. at Def. App. 0583, 0947. This policy became effective July 1, 2006 to coincide with the start of DISD's new fiscal year. *Id*. at Def. App. 0583, 0947. These policies have remained in place since that date. *Id*. at Def. App. 0583.

On or about May 10, 2006, the plaintiff Harold Cornish ("Cornish") applied for a position as a DISD police officer -- Vacancy -- Job #9708680186. Plaintiffs' [sic] Original Complaint ¶ 6; Appendix to Motion at Def. App. 0583. The job posting was issued on May 2, 2006, and stated that "[t]hese positions will not be available until after July 1, 2006[.]" Appendix to Motion at Def. App. 0583, 0590. Accordingly, Assistant Chief Avera did not begin to review applications for this position until after July 1, 2006. *Id*. at Def. App. 0583.

- 2 -

Assistant Chief Avera was aware that the Dallas Police Department ("DPD") previously had terminated Cornish's employment for cause, and that Cornish had challenged this termination. *Id*. Thus, Assistant Chief Avera knew that Cornish would be ineligible for rehire by the DPD unless he was successful in his challenge to the termination of employment. *Id*. However, Assistant Chief Avera did not know at what point Cornish was in the challenge process with the DPD. *Id*. Thus, Assistant Chief Avera invited Cornish to take the physical agility test and to participate in the oral interview board. *Id*. at Def. App. 0583-84. Assistant Chief Avera concluded that Cornish would have an opportunity to explain, during the interview process, the facts surrounding Cornish's termination from the DPD. *Id*. at Def. App. 0584. This termination had been widely publicized. Defendant's Motion for Summary Judgment ("Motion") at 16. Cornish's career with the DPD was lackluster, the final termination of his employment resulting from an incident in which Cornish attempted to bribe a witness to offer false testimony in conjunction with an internal investigation into Cornish's conduct. *Id*. at 5-10.

On August 30, 2006, Cornish passed the physical agility test. Appendix to Motion at Def. App. 0584. Later that day, in accordance with customary procedures, Assistant Chief Avera briefed the oral interview board before Cornish was interviewed by that panel. *Id*. at Def. App. 0584. He informed the board that Cornish's employment had been terminated by the DPD, and that he currently was employed

by the Lancaster Independent School District ("LISD").[1] *Id.*; *see also* Motion at 12.
The panel consisted of Lieutenant Calvin Howard ("Lieutenant Howard"), Sergeant
Simon Tapia, Assistant Chief Donovan Collins ("Assistant Chief Collins"), and
Sergeant Pat Gross.  Appendix to Motion at Def. App. 0101; *see also* Motion at 15.
At the time of the panel interview, Lieutenant Howard had known Cornish for
approximately 30 years and was godfather to Cornish's eldest child.  Appendix to
Motion at Def. App. 0083.  The panel asked Cornish a series of questions from a
prepared questionnaire used for all applicants.  *Id.* at Def. App. 0102.  Cornish
admitted to the panel that prior employers had terminated his employment.  *Id.*
Three of the four panel members voted in favor of allowing Cornish to proceed to the
background investigation phase.  Motion at 16.  Dissenting, Assistant Chief Collins
wrote the following on his copy of the questionnaire --"NOT RECOMMENDED!
INTEGRITY PROFILE QUESTIONABLE!"  Appendix to Motion at Def. App. 0403.

In October 2006, Assistant Chief Avera received Cornish's Personal History
Statement ("PHS").  *Id.* at Def. App. at 0584.  Upon reviewing the PHS, Assistant
Chief Avera asked Lieutenant Howard if Cornish's remained ineligible for hire with
the DPD.  *Id.*  Because Lieutenant Howard said that Cornish's status was the same,
Assistant Chief Avera stopped processing Cornish's application on the basis of

---

[1]    On December 11, 2009, Cornish, still employed by the LISD, was
arrested for allegedly beating a 16-year-old student.  See *Lancaster ISD Officer Arrested
in Beating of Student, 16, attached to* Defendant's Supplemental Brief in Support of
Motion for Summary Judgment, as Exhibit A.

DISD's "automatic disqualifier" policy for applicants who had been terminated by another agency and classified as "no rehire[.]"  *Id*. at Def. App. 0585.

In early 2007, Assistant Chief Avera was surprised to learn that Cornish was inquiring about his application status.  *Id*.  Because Lieutenant Howard and Cornish were close friends, Assistant Chief Avera assumed that Lieutenant Howard had informed Cornish about the automatic disqualifier.  *Id*.  To ensure that the termination of Cornish's DISD application was correctly decided, Assistant Chief Avera ordered a background investigation for determination of Cornish's status with the DPD.  *Id*.  Thereafter, DISD confirmed that DPD had terminated Cornish's employment, and that he was ineligible for rehire.  *Id*.; see also *id*. at 0592.  On May 4, 2007, Chief Blackburn sent a letter to Cornish informing Cornish to his application was no longer under consideration.  *Id*. at Def. App. at 0585.

On November 21, 2007, Cornish filed a charge of discrimination, claiming retaliation.  *Id*. at Def. App. 0437.  Specifically, Cornish averred that he was "retaliated against for having filed previous [Equal Employment Opportunity Commission] charges in violation of Title VII of the Civil Rights Act of 1964, as amended."  *Id*.  The Equal Employment Opportunity Commission subsequently issued him a Notice of Right to Sue.  *Id*. at Def. App. 0439.

On November 5, 2008, Cornish filed this lawsuit.  Specifically, Cornish alleges retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as

amended, 42 U.S.C. § 2000e *et seq.* Cornish maintains that DISD denied him employment because he was an engaged in the protected activity of "filing lawsuits against previous employers for race discrimination."[2] Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment ("Response") at 1.

## II. ANALYSIS

### A. Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[3] "[T]he substantive

---

[2]     The court notes that Cornish has had a history of filing lawsuits in this judicial district.

| | |
|---|---|
| **3:88-CV-2742-H** | *Allen Jr., et al v. City of Dallas, et al.* |
| **3:03-CV-2811-G** | *Cornish v. Correctional Services Corporation, et al.* |
| **3:04-CV-0049-M** | *Cornish v. Dallas Police Association* |
| **3:04-CV-0579-R** | *Cornish v. Texas Board of Criminal Justice Office of the Inspector General, et al.* |
| **3:04-CV-0945-N** | *Cornish v. The City of Dallas, et al.* |
| **3:04-CV-0969-K** | *Cornish v. Texas Department of Protective and Regulatory Services, et al.* |
| **3:04-CV-2368-G** | *Cornish v. Lancaster Independent School District* |
| **3:08-CV-1968-G** | *Cornish v. Dallas Independent School District* |

[3]     The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant make such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant make this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid*

- 7 -

*Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*,

954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  Summary

judgment in favor of the movant is proper if, after adequate time for discovery, the

motion's opponent fails to establish the existence of an element essential to his case

and as to which he will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

B. Retaliation

Section 2000e-3(a) of Title 42 of the United States Code prohibits an

employer from "discriminat[ing] against any of his employees . . . because [the

employee] has . . . opposed any practice made an unlawful employment practice by

this subchapter."  This court applies the three-step analysis utilized by the Supreme

Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), to analyze

Cornish's claims of discriminatory retaliation.  *Sherrod v. American Airlines, Inc.*, 132

F.3d 1112, 1121-22 (5th Cir. 1998); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th

Cir. 1996).  If Cornish establishes a *prima facie* case of retaliation, a presumption of

discrimination arises, and DISD must articulate a legitimate, non- discriminatory

reason for the employment action of which Cornish complains.  See *Sherrod*, 132 F.3d

at 1122; *Long*, 88 F.3d at 304-05; *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d

261, 267 (5th Cir. 1994).  If DISD satisfies this burden of production, Cornish must

prove the ultimate issue of retaliation by showing that the reason offered is a pretext

- 8 -

for prohibited discrimination.  *Sherrod*, 132 F.3d at 1122; *Long*, 88 F.3d at 305;

*Grizzle*, 14 F.3d at 267.

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he

engaged in an activity protected under Title VII; (2) an adverse employment action

occurred; and (3) there was a causal connection between the protected activity and

the adverse employment decision.  *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th

Cir. 1992).  The causal connection required is cause-in-fact or "but for" causation.

*Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984).  DISD can avoid

liability by showing a legitimate non-discriminatory rationale which explains the

adverse employment action.  *Id.*  Once such a non-discriminatory explanation is

offered, Cornish cannot prevail unless he shows that DISD's explanation is a pretext

for discrimination.  *Shirley*, 970 F.2d at 42; *Jack*, 743 F.2d at 1131; *Jones*, 793 F.2d at

728.

Assuming *arguendo* that Cornish has adduced sufficient evidence to establish his

*prima facie* case of retaliation, the court must next address DISD's proffered

explanation and Cornish's ultimate proof.  DISD maintains that its policy of

automatically disqualifying candidates terminated by a prior employer and thereafter

ineligible for rehire is a legitimate, non-discriminatory reason for failing to hire

Cornish.  Motion at 22.  The Supreme Court has held that a "no-rehire policy is a

quintessential legitimate, nondiscriminatory reason for refusing to rehire an employee

who was terminated for violating workplace conduct rules." *Raytheon Company v. Hernandez*, 540 U.S. 44, 54-55 (2003).

During the time DISD considered Cornish's application, the district hired two officers, Jonathon Cook and Eric Cruz ("Cruz"). *Id*. at Def. App. 0586.  Since DISD denied Cornish's application, "numerous applicants have been subject to the automatic disqualifier[.]" *Id*. at Def. App. 0585-86.  Cornish contends that Cruz was hired despite the fact that he was not eligible for rehire from the Cockrell Hill Police Department, his former employer.  Response at 16.  However, DISD has provided uncontroverted evidence that Cruz was in fact not terminated by the Cockrell Hill Police Department and was eligible for rehire with that department.  Defendant's Reply in Support of Motion for Summary Judgment at 2; Appendix to Motion at Def. App. at 0581.

To avoid summary judgment, Cornish must rebut DISD's legitimate explanations by providing evidence from which a reasonable jury could conclude that unlawful retaliation was the "cause-in-fact" of his injury.  See *Sherrod*, 132 F.3d at 1123.  Upon review of the evidence, the court concludes that Cornish has failed to provide proof from which a reasonable jury could find that retaliation was the cause-in-fact[4] of his complaint.  The record clearly indicates that Cornish was subject to the

---

[4]      The "cause-in-fact" analysis of pretext requires proof of a significantly stronger relationship between the adverse employment action and the alleged retaliation than is required to show a "causal link" for the plaintiff's *prima facie* case.

(continued...)

automatic disqualifier policy in effect at the time his application was considered by

DISD.  Accordingly, DISD's motion for summary judgment on Cornish's claim of

retaliation is granted.

### III.  CONCLUSION

For the reasons discussed above, DISD's motion for summary judgment is

**GRANTED**.

**SO ORDERED**

February 2, 2010.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**

---

[4](...continued)
*Sherrod*, 132 F.3d at 1122 n.8; *Long*, 88 F.3d at 305 n.4.